IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

CARLOS CASTRO CAMPOS,

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

21-cv-815-slc
_____

      In February 2021, an administrative law judge denied plaintiff Carlos Castro Campos's application for disability insurance benefits under the Social Security Act, finding that Campos was capable of gainful employment even though he had a number of medical impairments that limited the kinds of work he could perform. Campos now seeks judicial review of that decision under 42 U.S.C. § 405(g). The court agrees that the ALJ did not adequately grapple with some of the evidence of record, which, if credited, would preclude Campos from performing sedentary, full time work. Accordingly, I am reversing the decision and remand this case to the commissioner for further proceedings.

FACTS

      The following facts are drawn from the administrative record ("AR"), filed with the commissioner's answer, dkt. 9:

      Carlos Castro Campos is a former human resources officer for the military. He applied for disability insurance benefits in June 2020, at the age of 45. On forms submitted with his application, Campos stated that he left active duty in September 2019 because of post-traumatic stress disorder and migraines, and he was awaiting a decision on whether he would qualify for a military medical retirement. AR 1137. Campos said he had trouble concentrating, staying on task, remembering things, handling stress, and getting along with others. In addition, Campos said that he had a herniated disc and arthritis in his back that prevented him from

sitting or standing in one position for more than 5 minutes without a break, bending without pain, or lifting more than 10 pounds. AR 1129-1137. Campos's medical records document regular visits and treatment for low back pain, right shoulder pain, migraines, and PTSD related to military sexual trauma.

After the local disability agency denied the claim initially and on reconsideration, Campos requested a hearing before an administrative law judge. Campos's application was assigned to Administrative Law Judge Brent Bedwell, who held a telephonic hearing on February 10, 2021. Campos, who was represented by counsel, testified, as did a neutral vocational expert, Susan Entenberg.

The ALJ denied Campos's claim on February 24, 2021. AR 913-35. Applying the five-step sequential evaluation process for evaluating disability claims, the ALJ found that (1) Campos had not engaged in substantial gainful activity after his alleged onset date; (2) he had the severe impairments of lumbar radiculopathy, right rotator cuff tear, migraines, anxiety, post-traumatic stress disorder, depression and obstructive sleep apnea; (3) his impairments were not severe enough on their own or combined to meet or equal the severity of an impairment the commissioner presumes to be disabling (*a.k.a.* a "listed impairment"); (4) his impairments prevented him from performing his past work as a human resources manager; (5) nevertheless, Campos was not disabled because he could make a vocational adjustment to other jobs existing in substantial numbers in the national economy.

As a precursor to his findings at step four and five, the ALJ determined that Campos had the residual functional capacity to perform sedentary work, so long as it did not involve climbing ladders, ropes or scaffolds, or reaching overhead. The ALJ also found that Campos had a number of moderate mental limitations, but that Castro remained able to:

- perform unskilled jobs that involved simple and routine job tasks and instructions;

- maintain attention, concentration, persistence and pace for simple and repetitive tasks for two hours at a time during the workday;

- perform jobs requiring only occasional decision-making and changes in the work setting; and

- interact occasionally with the public, coworkers and supervisors.

Additional facts will be discussed as relevant in the analysis below.

OPINION

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022) (noting that substantial evidence is not a high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence.").

The administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must ... explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). The plaintiff bears the burden of proving that he is disabled. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

The focus of Campos's appeal is the ALJ's residual functional capacity determination. Residual functional capacity, or RFC, is the most a claimant can do despite his impairments and limitations. 20 C.F.R. § 404.1545; SSR 96-8p. In determining a claimant's RFC, the ALJ considers the limiting effects of medically determinable impairments and any symptoms caused by those impairments, including pain. *Id*. The ALJ's RFC finding is conclusive if supported by substantial evidence. *Pepper v. Colvin*, 712 F. 3d 351, 363 (7th Cir. 2013).

Campos argues broadly that the ALJ's RFC assessment was overly conclusory and failed to account for significant evidence regarding his impairments, making it unreviewable. Within this broad argument, Campos contends that the ALJ specifically erred by: (1) finding that Campos was capable of performing the sitting required of sedentary work; (2) finding that he had limitations in his ability to reach overhead but not in any other direction; (3) finding no limitations in his ability to use his hands or fingers; (4) failing to properly explain how he accounted for his migraines; (4) failing to adequately explain how he accounted in the RFC for a state agency consultant's conclusion that Campos had "moderate" mental limitations in some areas; and (5) made an improper credibility determination.

As explained below, the court agrees that the ALJ did not adequately address the evidence concerning Campos's migraines and limitations on sitting, which suggest a greater level of impairment than the ALJ found. Therefore, this case must be remanded for another look. In light of this conclusion, the court comments only briefly on the other alleged flaws in the ALJ's decision.

**I. Migraines**

The ALJ summarized the medical evidence concerning Campos' migraines as follows:

> [T]he claimant has migraines. In February 2019, the claimant reported getting two or three migraines per week despite preventative medication. In January 2020, he reported fairly severe migraines occurring several migraines [*sic*] per month. He returned

4

> in August 2020 with complaints of severe headaches with intermittent migraines. He reported that his headaches could last one hour to all day and that his migraine headaches occurred approximately twice per week and that he had symptoms of photophobia, phonophobia and nausea. In November 2020, he reported lack of control over his migraines. He described a severe migraine occurring twice per week with pain in his eye, blurred vision, photophobia and nausea. He also reported a dull headache on a daily basis. Interventions have included preventative and rescue medications.

AR 924.

At the hearing, Campos testified that he gets six to eight migraine headaches a month, that come on without warning, and that may last an hour or all day. AR 959-60. He said his medications reduce his pain somewhat but do not eliminate it entirely, and that he seeks relief by lying down in a dark room. AR 960. The vocational expert testified that missing more than seven to ten days of work a year or taking two or more unscheduled breaks of 10-15 minutes a day would preclude competitive work. AR 965-66.

The ALJ found that Campos's migraines were a severe impairment, which meant that he had to include limitations for them in the RFC. *Pamela W. v. Kijakazi*, No. 21 C 2686, 2022 WL 2967342, at *2 (N.D. Ill. July 27, 2022). But, as Campos persuasively argues, it is impossible to tell what limits the ALJ thought the migraines caused or how they affected Campos's ability to perform basic work-related tasks because the ALJ did not make any specific findings on this issue. Instead, in describing the basis for his RFC, the ALJ stated that "[d]ue to the claimant's migraine, lumbar spine, right shoulder and sleep disorders," the ALJ was limiting Campos to sedentary work with no climbing ladders, ropes or scaffolds. AR 924. In addition, the ALJ stated that the various additional mental limitations he included were appropriate not just because of Campos's mental disorders but also to "address the claimant's migraine headaches, fatigue/sleepiness from his sleep apnea, and medication side effects of drowsiness." AR 924. As far as Campos's migraines are concerned, however, this analysis is a non-sequitur: if Campos's

5

testimony is credited, then he would not be able to attend work reliably *at all*, no matter what physical or mental abilities the job required.

Presumably, the ALJ determined that Campos's testimony concerning his migraines was not credible. Indeed, as "there is no objective measure for migraine symptoms . . . the ALJ could *only* determine the limiting effects of [plaintiff's] migraines by assessing [his] credibility." *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020) (citation omitted)(emphasis added). Under SSR 16-3p[1], an ALJ assessing a claimant's subjective allegations about his symptoms must consider several factors to determine the impact of those symptoms on the claimant's ability to work. These factors include the objective medical evidence, claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. *Id*. In addition, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.

The acting commissioner argues that the ALJ complied with his duties in this case. She notes that the ALJ "discussed" Campos's reports of the frequency and severity of his migraines, which varied; his use of preventative and rescue medications; examinations showing good mental and physical functioning; and plaintiff's activities, which showed him to be more functional than he alleged despite his frequent migraine complaints. But as Campos points out, the ALJ's summary-like recitation of the evidence does not provide enough reasoning to show why the ALJ rejected Campos's testimony that he suffered from six to eight debilitating migraines a month, or how the ALJ thought that Campos could work in spite of them. For example, the fact that

---

[1] Although the commissioner's regulations no longer use the term "credibility," courts, including this one, use that term synonymously with the subjective symptom evaluation that an ALJ must make under Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 FR 49462-03, 2017 WL 4790249, *49465-66 (Oct. 25, 2017).

Campos's physical or mental examinations were "relatively normal" are uninformative unless he had a migraine when he was examined wouldn't offer much insight, given the subjective nature of a migraine. Likewise, Campos's ability to exercise regularly, spend time with his children, watch football, and do some chores around the house does not contradict his testimony that he gets headaches lasting hours to a day, and that these occur a handful of times a month. As for the ALJ's so-called "discussion" of the frequency and severity of Campos's headaches and his use of medication, the ALJ merely summarized the medical reports. He did not indicate whether he thought the medications were beneficial, nor did he specifically find that Campos would have fewer or less intense migraines than he testified.

The only piece of evidence cited by the ALJ that was arguably inconsistent with Campos's complaints of debilitating migraines is his admission that he had looked for work, which the ALJ found "suggests that factors unrelated to his impairments contributed to his inability to work." AR 926. But as the Seventh Circuit has noted, a job search, "on its own, is not evidence that [the claimant] embellished her pain, because a claimant who looks for work after claiming a painful disability may have 'a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.'" *Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018)(quoting *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016)). Further, Campos testified that he wasn't sure if he would be able to maintain a job, was looking for part-time work, and didn't receive any return calls from the places he applied. AR 945. Campos's job search was thus insufficient evidence to support the ALJ's adverse credibility determination with respect to the limiting effects of his migraines.

The bottom line is that the ALJ failed to cite specific reasons, supported by the record, for rejecting Campos's subjective allegations concerning the frequency and severity of his migraines. Because that evidence, if credited, suggests that Campos is unable to perform the jobs identified by the vocational expert, this case must be remanded.

II. **Sedentary Work/Impact of Obesity**

The ALJ determined that Campos was limited to performing sedentary work, which is defined as work that involves mostly sitting, with some walking and standing, and lifting no more than 10 pounds at a time. 20 C.F.R. § 404.1567(a). This was a lesser level of exertion than that found by the state agency consultants, Drs. Chan and Khorshidi, who determined, respectively, that Campos was capable of performing work at the light and medium levels of exertion. AR 926-27. The ALJ explained that he agreed with the consultants' overall conclusions that Campos had the physical ability to perform at least some kinds of work, finding it consistent with and supported by (1) physical examinations, which "generally revealed normal muscle strength save for reduced right upper extremity strength at times, normal gait, and normal tone and bulk with no atrophy"; and (2) evidence indicating that Campos exercised regularly and used the cardio and weight-lifting equipment at the gym. *Id*. But the ALJ found that Chan and Khorshidi had not adequately accounted for Campos's "complaints of shoulder and back pain and dysfunction as well as his migraines and nonsevere obesity," which warranted a reduction to sedentary work. AR 927.

Campos does not challenge the ALJ's weighing of the medical opinions or contend that the ALJ was prohibited from assessing RFC; indeed, determination of a claimant's RFC is reserved for the ALJ. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). But Campos argues that once the ALJ rejected the opinions of the state agency consultants, he needed to point to other evidence to support his conclusion that Campos could perform full-time sedentary work. Campos acknowledges that the ALJ reviewed a "significant portion" of the evidence, but he says the ALJ merely summarized it without explaining *how* he weighed that evidence to arrive at his ultimate conclusion that Campos could perform sedentary work. In particular, contends Campos, the ALJ did not explain why he rejected Campos's problems with prolonged sitting, which Campos reported both in his function reports to the agency and on multiple occasions to his health providers. *See* AR 1267; 1312; 1345; 1516; 1521; 1836; 1861; 1931; 2047; 2085.

8

While it is rare that an ALJ will err by adopting an RFC that is more restrictive than those offered by the only medical professionals to opine on the subject, I conclude that this is one of those rare cases. As Campos points out, the ALJ accepted that Campos suffers from lumbar radiculopathy (*a.k.a.* sciatica), a condition that can be exacerbated by prolonged sitting, and his record contains numerous reports corroborating his allegation that, in fact, he could not sit for long periods of time.[2] The ALJ also found that Campos has nonsevere obesity. The combination of these two impairments, along with Campos's documented complaints of pain with prolonged sitting, constitute substantial evidence suggesting that Campos would have trouble performing the sedentary jobs identified by the vocational expert. As such, the ALJ was required to confront it and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.")(citations omitted). His failure to do so warrants remand.

### III. Upper extremity limitations

Campos next argues that the ALJ failed to explain "why he limited Plaintiff from reaching overhead but not in any other direction, particularly out in front of him, or why he did not limit Plaintiff's use of his hands and fingers." Dkt. 13, at 13.

Campos's argument about the use of his hands and fingers requires little discussion. Although he points to his diagnosis of cervical radiculopathy and to medical reports in which he reported intermittent numbness and tingling down into his hands and fingers, he did not report any functional problems with his hands on any of his function reports or in his hearing testimony. Absent any evidence that his radiculopathy was actually causing problems in his

---

[2]https://www.health.harvard.edu/blog/taming-pain-sciatica-people-time-heals-less-2017071212048

ability to use his hands, the ALJ was not required to address it. *See McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("[T]he need for restrictions cannot be inferred from the diagnosis alone."); *Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021) (physical injury alone "does not prove disability").

I also find no error in the ALJ's failure to find that Campos was limited in his ability to reach in front of him or out to the sides. Campos points to various reports documenting his subjective complaints of shoulder pain with range of motion testing, including when raising his arms more than 90 degrees to the side or in front. Dkt. 13, at 15. But the ALJ reviewed all the evidence concerning Campos's shoulder impairments in his decision. AR 923, 925. None of the medical evidence establishes that Campos was unable to reach in front of him or to the side, nor did he offer testimony to that effect. In addition, as the ALJ noted, he was able to ride a Peloton bicycle, do some household chores and lift light weights at the YMCA. Given the mixed evidence concerning Campos's shoulder limitations, the ALJ did not err in concluding that Campos could use his arms except for overhead reaching, which was the only reaching limitation found by the state agency physicians. *See* AR 1011-12; 1026.

**IV. Mental limitations**

Campos argues that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions about plaintiff's mental limitations. In particular, he challenges the ALJ's determination that Campos's moderate social limitations would not prevent him from sustaining "occasional interaction with the public, coworkers and supervisors," and that his moderate limitations in concentration, persistence, and pace would not prevent him from performing simple, repetitive tasks. AR 927.

If this were the only issue on which Campos sought reversal, the court would probably uphold the ALJ's decision. His assessment of Campos's mental limitations hewed closely to the narrative description offered by state agency consultant Kyla Holly, Psy. D., and Campos did

10

not identify any other medical professionals who offered a specific assessment of his mental limitations. Further, as the ALJ pointed out, Campos had no difficulties interacting with his providers, he could tolerate superficial interactions in the community like at the grocery and the Y, he showed fair-to-good attention and concentration during mental status exams, he had "relatively conservative" mental health treatment, he was able to perform some daily chores, and he had applied for work. All of this tends to support the ALJ's conclusion that Campos's moderate mental limitations did not preclude him from performing simple, routine, and repetitive jobs with the additional restrictions included in the RFC.

Nevertheless, because the court is remanding this case for further proceedings, on remand the commissioner should take another look at Campos's mental limitations. In particular, Campos's ability to maintain concentration, persistence, and pace, even for simple jobs, could be called into question depending on the ALJ's conclusions about the frequency and severity of Campos's migraines. Further, Campos testified to having significant problems sleeping, which the ALJ said little about, and which could further contribute to attention lapses and difficulty staying on pace. The ALJ who hears this case on remand should be sure to build an accurate and logical bridge between the evidence and any conclusions reached about Campos's mental RFC.

## V. Credibility

Finally, Campos challenges the ALJ's evaluation of his subjective symptoms, arguing that it was unexplained, mischaracterized some of the medical evidence, and drew unfounded conclusions about Campos's activities and job search. In light of the conclusion that the commissioner's decision requires reversal for the reasons discussed above, the court declines to address this error at this time (apart from what it already said during the discussion about Campos's migraines). On remand, the ALJ should re-evaluate Campos's subjective symptoms in accordance with SSR 16-3p.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security is REVERSED, and the case is remanded further proceedings consistent with this opinion.

Entered this 17th day of July, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge